*Kennerly* vs. *Martin.*

## KENNERLY *vs.* MARTIN.

A promise by the wife, after the death of her husband, to pay a bill for medical attendance upon the family of the deceased during his life-time, is not founded upon a good consideration, even though a part of the bill was for attendance upon the wife, and slaves, her separate property.

APPEAL from the St. Louis Court of Common Pleas.

SPALDING and TIFFANY, *for Appellant.*

1. The record from the Court of Probate ought to have been admitted as evidence for the defendant below, because it could properly have been proved a true copy by oral testimony, and because it was relevant testimony.—1 Starkie's Ev., 155; Peake's Ev., 28, 29; Roscoe's Ev., 54; 1 Phillips' Ev., 309. These references show, that a sworn copy of a record was admissible evidence before the jury in the present case.—6 Mo. Rep., 501, McKinney's Administrator *vs.* Davis. This case shows that the allowance of the demand in the County Court was a *judgment*, and had all the legal consequences of a judgment of a court of record, and was a bar to any other suit for the same, and therefore was legal testimony.

2. The instructions asked by defendant below ought to have been given, for the widow is not liable for the debts of the husband, even on an express promise to pay them, unless there be a good consideration for that promise, and the promise itself be in writing.— Chitty on Contracts, 6, 7; Comyn on Contracts, 8–10; 7 Term Rep., 350, note A, as to consideration; Rev. Code, p. 117, sec. 1, that an assumpsit to pay the debt of another must be in writing.

3. The instruction given was wrong; it assumes that the plaintiff's services, for which he sued, were rendered to the *defendant personally, and to her slave*, in the husband's life-time, and then declares it to be law, that the subsequent promise bound her; whereas there is no proof that the services were rendered to *her* or to *her slave*, but, on the contrary, were rendered to the husband; and even had the proof been that the services were rendered to *her personally*, yet the claim for compensation would have been a debt of the husband.

POLK, *for Appellee.*

1. The instruction given by the court to the jury on the trial of this cause, was the correct law of the case.—5 Taunt., 36, (1 Eng. Com. Law Rep., 10); 1 Chitty's Pleadings, p. 66, side-paging.

2. The Court of Common Pleas did right to refuse to give the instructions prayed by defendant's counsel on the trial of the cause.

3. The court below, in excluding from the jury the writing offered by defend-

ant, purporting to be a copy of a judgment of the County Court, fell into no error that ought to be sufficient to reverse the judgment of that court.

4. The judgment of the court below ought not to be reversed because that court overruled the defendant's motion for a new trial.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of assumpsit, brought by appellee, to recover the amount of a medical bill, and the plaintiff had a verdict and judgment for $118 53.

Upon the trial, a bill of particulars was furnished by the plaintiff, consisting of items of medical attendance, medicine and professional services, from the 21st of August, 1839, to January 18, 1841. Of this amount, $99 accrued in the life-time of James Kennerly, the husband of Eliza M. Kennerly, the defendant. It appeared, that so much of the bill as consisted of items for services rendered in the life-time of James Kennerly had been presented to the County Court, and allowed against the estate of said Kennerly. The professional services charged against the defendant in the bill of particulars, which had been rendered in the life-time of James Kennerly, were services rendered to the defendant herself and two slaves. James Kennerly died in August, 1840, insolvent.

After the death of James Kennerly, a collector of the plaintiff called on the defendant (Mrs. Kennerly) with two bills for medical services, embracing not only the services rendered since the death of Kennerly, but medical attendance upon Mrs. K. during her husband's life-time, and upon her daughters. The bills were left at her house. Shortly afterwards, the collector called for payment, when the defendant told him to call on Mr. F. W. Risque with the two accounts, and he would settle them, he being her agent, or attorney.

The defendant, upon this testimony, asked the court to instruct the jury, first, that they should exclude from their consideration all items for services rendered during the life-time of James Kennerly; and, second, that the defendant was not liable, upon any promise, to pay the debts of James Kennerly, unless made in writing. These instructions the court refused to give, but instructed the jury, — " That if they believed, from the evidence, that the defendant, after the death of her husband, expressly promised to pay the plaintiff for services rendered to her personally, and to her slaves, they should find for the plaintiff, although such services were rendered in the life-time of her husband, and were charged for in a bill presented against his estate."

Exceptions were taken to these instructions, and a new trial moved for, on the ground that the court had misdirected the jury, but the new trial was refused.

The only question is, whether these instructions are right.

There are cases in which a moral obligation has been considered a sufficient consideration to support a subsequent express promise to pay. (Lee *vs.* Mudge-ridge, 5 Taun., 37; Barnes *vs.* Headly, 2 Taun., 184.) In such cases the promise must be unequivocal, and the declaration must set forth all the circumstances, showing that the money is in conscience due; or, where such minuteness may not be required by the form of action, they must, at least, be established by proof.

(Littlefield's Executors *vs.* Shee, 2 Barn. and Adolph., 811.) In this last case, Lord Tenterden observes, "That the doctrine that a moral obligation is a sufficient consideration for a subsequent promise, is one which should be received with some limitation."

In the present case there was no moral obligation whatever on Mrs. Kennerly to pay a debt contracted during her husband's life-time. It is clear that the professional services rendered the defendant personally, during her husband's life-time, constituted a debt against him; and so much of the instructions of the Court of Common Pleas as authorized a recovery for such services, was obviously wrong. The latter part of the instructions, which allows a recovery for services rendered her slaves during the life-time of her husband, might, under a different state of facts, receive some countenance from the case of Mudgeridge *vs.* Lee; but, upon the case made out, was clearly erroneous. It is distinguishable from the case of Mudgeridge *vs.* Lee in several essential particulars.

In the case cited, a *femme covert*, having a large estate secured to her separate use by marriage settlement, gave a bond for the repayment, by her executors, of a sum of money advanced at her request. After her husband's death, she wrote to the obligee, promising that her executors should pay this bond. This promise was made with a knowledge of all the circumstances. The bond given by her was void, nor did it constitute any debt against her husband or his estate; but the money having been advanced to her upon the faith of her separate estate, and she having solemnly promised, under seal, to pay it, there could not well be conceived a case of stronger moral obligation.

In the present case, there is no proof of any separate estate of the wife in slaves or other property. True, it might possibly have been inferred, from the husband's insolvency, and the fact that the widow still continued to hold slaves, that she had a separate estate in these slaves, to whom the services were rendered; but the inference is, at best, a forced one; and if such was the fact, it was capable of plain proof.

Had it been proved, it would not, however, alter the case. Services rendered to these slaves, though the separate estate of the wife, would still be the husband's debt, unless under special circumstances. It cannot be pretended that the mere fact of the wife sending for Dr. Martin made *her* responsible for the bill. In such cases the wife merely acts as agent for her husband.

Nor would it seem that Mrs. Kennerly considered herself responsible, or that the physician trusted to her responsibility. On the contrary, he presented the bill against the estate of J. Kennerly, and it was allowed. The idea of the widow's responsibility appears to have been an after-thought, suggested by the insolvency of Kennerly's estate.

Had Mrs. Kennerly been possessed of slaves to her separate use, not subject to the control of her husband, and sent for Dr. Martin to attend these slaves, and at the time promised him to pay for such services; and had the doctor performed the services on the faith of such promises, knowing at the time that the husband was insolvent, it would have been like the case of Lee *vs.* Mudgeridge. The moral obligation upon Mrs. K. might have supported a subsequent promise.

The case of Littlefield's Executors *vs.* Shee is much more analogous to the present. In that case, the action was brought to recover for butcher's meat supplied to the defendant, for her own use, whilst her husband was abroad. After her husband's death, defendant promised to pay the debt when it should be in her power, and her ability to pay was proved at the trial: yet it was held, that the defendant having been a femme covert at the time when the goods were supplied, her husband was originally liable, and the price constituted a debt against him; the plaintiff was therefore nonsuited.

Judgment reversed, and cause remanded.