NASH *vs.* RUSSELL.

An action cannot be maintained upon a note given by a person to an officer of a benevolent society, for his initiation fee as a member, and for his quarterly dues.

A mere moral obligation, although coupled with an express promise, is not a sufficient consideration to support a note or bill, between the same parties, unless it is founded on a former legal liability.

THE defendant Russell, on the 2d of January, 1847, was initiated as a member of Eagle Tent No. 174 of the Independent Order of Rechabites, in De Ruyter. The initiation fee was five dollars, one of which was paid as proposition money, before his election, and the remaining four, though required by the law to be paid before the ceremony, was not. By the constitution of the order, every member is to contribute to the funds of his tent not less than one dollar per quarter. On the 1st of May, 1847, the four dollars remaining unpaid, and his quarterly contribution, having become due, the secretary drew a note as follows: " $5,00. On demand, I promise to pay J. D. W. Potter, financial secretary of Eagle Tent No. 174, I. O. R., or bearer five dollars with use from date, value received. De Ruyter,

---

---

May 1st, 1847." Charles Benjamin was, at the time, treasurer of the society. He received the note from the financial secretary, who informed him of the consideration of the sum stated in it, and he presented it to Russell who signed it, and it remained in his possession as treasurer, until his term of office expired, and was then delivered to the plaintiff as his successor, as part of the effects of the society. The plaintiff brought a suit to recover the amount of the note in March, 1848, before a justice of the peace, and obtained a verdict and judgment, which judgment was removed to the Madison county court, and there reversed. The cause came before this court on appeal from the judgment of that court.

*A. V. Bentley,* for the plaintiff.

*Goodwin & Mitchell,* for the defendant.

*By the Court,* MOREHOUSE, J. The avowed object of the association of Rechabites " is mutual benefit in the exercise of *temperance, fortitude and justice ;* receiving sympathy and relief in times of sickness and distress, and in the event of *death,* the decent observance of the necessary funeral obsequies for the brethren and their wives ; and is based upon and seeks the extension of the principle of total abstinence from all intoxicating drinks." The funds of the society are consecrated to the furtherance of these social, moral and religious objects, and cannot be constitutionally diverted by a primary tent, except a sum not exceeding fifty dollars for the purpose of furnishing a tent room. They are purposes which challenge the favor of the uninitiate, and if accomplished, their effect upon the moral character of the members, and their ministrations at the bed of sickness, the chamber of languishing, and in the house of mourning, seems to me to constitute the highest of moral obligation on the part of the recipient to redeem the pledge of cheerful obedience to the constitution and laws of the order, which he made upon his matriculation. This court, however, cannot treat the question in the cause ethically. It belongs to the department of

moral philosophy to teach men their duty, and the reasons of it, and to lay down rules for action, and manners in society. Courts of law have power to enforce the observance of *legal* obligations only. Did Russell, then, by any promise express or implied, upon becoming a member of the order, subject himself to a legal obligation to pay the initiation fee, or to contribute to the funds of the tent periodically? If not, did the express promise evidenced by the note change the legal relation of the society and its members? These questions may be briefly answered by bringing them to the test of a few apposite general principles. By legal obligation I mean one inferable by law. If there was an express agreement, on the defendant's part, to pay the initiation fee, it was a promise to the members of the society of which he immedately became one, and jointly interested in its fund; and he could not be sued for the fees, without involving the legal absurdity of suing himself. ( *Warren* v. *Stevens,* 19 *Pick.* 73.) A mere moral obligation, though coupled with an express promise, is not a sufficient consideration to support a bill between the same parties. (*Story on Bills of Exchange,* 201, § 182.) An express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original cause of action, if the obligation, on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision. ( *Wennell* v. *Adney,* 3 *Bos. & Pull.* 247, *note a. Eastwood* v. *Kenyon,* 11 *Adolph. &. Ell.* 438.) The note of the learned reporters, Bosanquet & Puller, contains a collection of most of the older cases on the subject, and vindicates the conclusion arrived at, and which I have quoted as the general rule. It was not insisted, upon the argument, that the original obligation or promise on which the note was founded, could have been enforced at law. The rule is therefore decisive, if the note has not rendered it inapplicable. The tent is an association of individuals subscribing articles of association, which fix the standard of eligibility, the government of the order, its officers, their

election or appointment, and the duration of their office, their duties respectively, and those of the members. The officers of primary tents are elected or appointed for a period not exceeding six months. It is obvious that such an association cannot have the rights of succession or any other attributes of a corporation. The officer of to-day, to whom a promise is made, if there be any constitutional article adapted to such a case, goes out of office to morrow. If a right of action vested in him he carries it with him, though he has ceased to be under the control of the society; if he dies, it vests in his personal representatives. It could not have been the intent of the society that a treasurer or secretary holding place by so brief a tenure, should be authorized to sue delinquents for dues and fines, if they could be sued at all, when by the change for which the constitution provides, they would be beyond their control before a suit commenced would, by the ordinary delay in its prosecution, terminate. It is well settled that no persons can take in succession, or maintain suits as successors, except corporations or their officers, or persons specially authorized by law. The promise in this case was made to the financial secretary in his natural capacity, or to the society. If the former, the note shows upon its face the use to which the moneys are to be appropriated when recovered. It was held by the treasurer until he went out of office, was handed to his successor, and he commenced a suit upon it. What changes have taken place since, in this necessarily shifting and mutable association, I am of course ignorant. The secretary to whom the note was made payable advanced no money, incurred no expense or legal obliation, to pay Russell's indebtedness to the tent, and there was therefore no legal consideration to support the promise as a new one. There has been no actual negotiation of the note. The articles of association provide for the trial of charges preferred against a brother for a violation of any of the principles of the order or offence against its laws, involving fine, reprimand, suspension or expulsion. The ends of the society will be best promoted by pledges and agreements to be carried into effect as honorary engagements, and not enforced in courts of law; and

if it was practicable to support this action, I should, as a ques-
tion of policy, be strongly inclined against it as prospectively de-
structive of the brotherly love, and kindness, and beneficence of
which they now furnish an example in a high degree praise-
worthy. Upon the principles which govern courts in relation
to other contracts, an action cannot be maintained on this in-
strument, and the judgment of the county court must be af-
firmed.

