# OCTOBER TERM, 1872.

## JULIA PORTERFIELD *v.* B. J. BUTLER.

1. PLEADING—PRACTICE—DEPARTURE.—A departure in pleading is where a second pleading quits the ground of the first, and has recourse to another, which is fatal on demurrer. The test in all cases is that all subsequent pleading must "support and fortify" the first.

2. SAME—NOVEL ASSIGNMENT.—A novel assignment is a re-statement in a more minute and circumstantial manner of the cause of action alleged in the declaration.

3. CASE AT BAR.—B. sued P., a married woman, who pleaded her coverture; B. replied, averring: 1st. That the money sued for was to pay for property bought by P. and held and owned by her as her separate property; and that she was, at the time of the purchase, the owner of a large amount of separate property in her own right; and, 2nd. That since the death of her husband, and while sole and unmarried, defendant ad-

mitted that her obligation sued on was in consideration of property so purchased by her as her separate estate; that the same was just, due and unpaid; and that she then and there again undertook and promised to pay the same, &c.: *Held,* that the replication thus setting up a new promise in such case, was a *departure,* and that a demurrer to it was properly sustained.

4. PRACTICE—GENERAL RULE.—Judgments without issue joined are nullities.

5. SAME—PRACTICE.—Formal recitals in the entry made in the minutes that "thereupon came a jury who," etc., avail nothing against positive facts of the record; and where any pleading remains unmet by issue, the judgment will be reversed.

6. MARRIED WOMEN—The purchase of a steamboat on a credit, by a married woman owning separate estate, is a nullity.

7. SAME—NEW PROMISE AFTER DIS-COVERTURE.—The promise of a woman, when sole and unmarried, to pay for a steamboat bought on credit by her while married, does not revive or create any obligation on her part.

ERROR to the circuit court of Warren county. SHACKELFORD, J.

*Simrall & Young,* for plaintiff in error.

No counsel for defendant in error.

TARBELL, J.:

In June, 1866, Baxter J. Butler, for the use of Warren Mitchell, filed his declaration against Julia Porterfield, in an action of *assumpsit,* to recover the amount of three several bills of exchange drawn by William Porterfield on Mrs. Julia Porterfield, and accepted by her, payable in four, six, and nine months, respectively, to the order of J. J. Robinson, in "payment of the steamer Emma Belt," each for the sum of $1,833.33, and dated July 11, 1859.

To the declaration, the defendant pleaded her coverture with William Porterfield, at the date of the execution of the bills of exchange. The plaintiff replied, that the several acceptances were given by defendant in part payment of the steamer Emma Belt, purchased by her and held and owned by her as her separate property; and that at the time defendant gave those acceptances she was the owner of a large amount of other property in her own right, and as her separate

property; and, 2nd. That the plaintiff, since the death of said William Porterfield, late husband of said Julia Porterfield, and while she was sole and unmarried, to wit: on the 1st day of January, 1866, admitted to plaintiff that said acceptances were all given by her in consideration of the purchase by her of the steamer Emma Belt, and were unpaid and just and due, and she then undertook and promised to pay plaintiff the several sums of money in the acceptances mentioned, when she should be requested, etc.

To the replications of plaintiff the defendant demurred on the ground, first, that the allegations of the replications constitute a departure in pleading, and, second, because the replication sets up and exhibits against her new matters not set forth in the declaration.

The demurrers were overruled, whereupon the cause was submitted to a jury, who found for the plaintiff, $7,124. Having removed the cause to this court, counsel for Mrs. Porterfield assign the following causes of error:

That the court erred in overruling her demurrers to the replications; and in submitting the case to a jury when there was no issue for the jury to try.

The questions presented for adjudication will be disposed of in the order of their importance.

1st. Was there in this case a departure in the pleadings? It has been determined that a departure is a matter of substance, and must be taken advantage of by demurrer; to which the defendant has resorted to in this instance. The rule by which this question is determined is very ancient, and is thus stated by Lord Coke: " A departure in pleading is said to be, when the second plea containeth matter not pursuant to his former, and which fortifieth not the same; and therefore it is called *decessus,* because he departeth from his former plea." In a note to Richards and Hodges, 2 Saund. 84,

Mr. Sergeant Williams thus defines a departure : " A departure in pleading is said to be, when a man quits, or departs from the ground which he has first relied upon, and has recourse to another; it is where his subsequent plea does not contain matter pursuaut to his former, nor support and fortify it." The rule is thus stated in Stephen on Pleading : " A departure takes place when, in any pleading, the party deserts the ground that he took in his last antecedent pleading, and resorts to another." The test in all the cases is, that the subsequent pleading must " support and fortify" the first. The most usual departures is in matters of fact, but it is no less a departure if a party puts the same facts on a new ground in point of law. Stephen on Pleadings, 414.

The replication in the case at bar cannot be termed a new assignment, which is a restatement, in a more minute and circumstantial manner, of the cause of action, alleged in the declaration. Lee v. Gardiner, 26 Miss. 544, affords an illustration of this class of replications. In that case, the allegation in the replication of " a waste of the proceeds of the sale of the intestate's lands," was held not a departure from the averment in the declaration of a " a *devastavit* of the credits and moneys," which were of the deceased at the time of his death, on the ground that the replication was not an abandonment of the position taken in the declaration, but a restatement of the cause of action in a more minute and circumstantial manner. Hardin v. Phelan, 41 Miss. 112, is an illustration of the general rule cited, that the replication must " support and fortify " the declaration. The court say, " A married woman generally can make no valid contract, and her promises are *prima facie*, void. If the plaintiff would rely on any of the special considerations that authorize a married woman, by our laws, to make a binding contract in reference to the support and management of the separate property,

he must either set out the facts in his declaration, or in a special replication to the plea of coverture.  It is not necessary for the defendant to negative, in the plea, all the facts and circumstances, the existence of which might render the contract binding upon her.  The rules in regard to the plea of infancy, and the proper replication thereto, are fully settled in accordance with these views, and are precisely analogous to cases of coverture under our statutes.  If the facts relied on are properly charged in the declaration, so as to present a case within the statute, the plea of coverture would not be a good plea, but the defendant would be obliged to take issue on some other point." In that case, the action was upon the original consideration, and it was necessary to state in the pleadings the facts showing that the contract sued on was authorized by statute, if not in the declaration, then in the replication, and thus the latter would " support and fortify " the former.  In the case at bar, the action, if maintained, must be upon the subsequent promise, based upon " the premises " set forth in the declaration.  Wherefore in such case, the replication does not " support and fortify " the declaration, because the right of action rests on the promise in the former, unlike the *revival* of debts barred by statute, discharged in bankruptcy, created during infancy, etc. Way v. Sperry, 6 Cush. 238.

Departure may be of fact, but it is also a departure, if the party puts the same facts on a new ground in point of law.  Stephen on Plead. 412.  To a plea of coverture *at the time* the promises were made, the plaintiff can only deny the fact, or reply some matter which shows that *at the time* the defendant was competent to contract.  Chitty on Plead. 580.  The replication admits the promise in the declaration to have been made during coverture, and sets up a new promise.  The promises are, therefore, different.  The consideration of the promise in the declaration was the sale and purchase of

the property therein mentioned. The promise in the replication is based upon the theory of a moral obligation to redeem the promise set forth in the declaration. The considerations, are, therefore, different. Meyer v. Haworth, 8 Barn. & Ald. 467, was a case like this. Littledale, J. said, "The replication does not support the declaration. The promise in the declaration was altogether void. This is not like the case of an infant, whose promise is voidable only." Therefore, we conclude that there was a departure in the pleadings, and that the demurrers to the replications were well taken.

2d. The demurrer having been overruled, the cause was tried, and a judgment had upon the verdict of a jury, without issue taken by the defendant to the replications. Was this error? As a general rule, a judgment without issue joined is a nullity. The pleadings in a cause must evolve an issue of law or of fact before a judgment can be rendered." Armstrong v. Armstrong, 42 Miss. 506. Judgments rendered without issues to be determined by them, are nullities. Steele v. Palmer, 41 Miss. 88. The record must show affirmatively that an issue was submitted to the jury, and if otherwise, the judgment is erroneous. Breck v. Mosley & Mallory, 24 Miss. 170. It is recited in the record before us that "thereupon came a jury, * * * who, having been duly empannelled and sworn, well and truly to try the issue joined, upon their oaths do say," etc., yet it affirmatively appears in the body of the record, that the defendant did not join issue on the replications, and it is well settled that these recitals weigh nothing against the positive facts of the record. Hence it is, that the judgment in this case, without an issue joined, is erroneous, and for this cause alone would be reversed.

3d. Do the pleadings on the part of the plaintiff in this case set forth a good cause of action against the defendant? This is a question of grave importance, yet susceptible of certain demonstration. Story, § 468,

defines the rule in this class of cases, which, upon a careful consideration of the authorities, correctly states the law. He says, "contracts merely voidable, and not void, in these inceptions, may be revived by a subsequent promise, provided they were originally founded upon an express or implied request by the party benefited; but, where the promise is void, *ab initio*, it is not capable of ratification. ` Thus, where a married woman gave a promissory note, and after her husband's death, promised, in consideration of the forbearance of the payee, to pay it, it was held, that the note was absolutely void, and that forbearance, where there was no cause of action originally, is not a sufficient consideration to raise a promise. Lloyd v. Lee, 1 Stra. 94; Watkins v. Halstead, 2 Sandf. 311. So also, a bare promise by an adult to pay a bond given by him as surety during his infancy would not be a sufficient consideration, because the bond was void, and what is void in its inception cannot be made good by a ratification. Keane v. Boycott, 2 Black, 511; Tucker's Lessee v. Moreland, 10 Pet. 59. So, also, where certain goods were supplied to a *feme covert*, living apart from her husband, and for which she, after his death, promised to pay, it was held, that the subsequent promise was void, because the goods being supplied to her during the life of her husband, the price constituted a debt due from him, and not from her. Littlefield v. Shee, 2 Barn. & Adol. 811; Meyer v. Haworth, 8 Adol. & Ell. 467.

Opposed to this doctrine are the cases of Lee v. Muggeridge, 5 Taunt. 36; and Vana v. Wells, 8 Ala. 399. The former was decided in 1813, upon transactions originating in 1789. The pleadings presented a case wherein the court held there was a moral obligation, which was considered in the circumstances a good consideration for the promise. There was a marriage settlement, the property of the intended wife being placed in the hands of trustees, wholly beyond the control of

the prospective husband, subject only to the orders, directions, and disposition by will of the *feme ;* marriage ; a loan of money to the wife, at her solicitation to aid a member of her family ; a bond by the *feme covert* obligating herself and her legal representatives ; the death of her husband ; a letter from the widow, pledging her executors to pay the money ; her will directing her debts to be paid ; and an action against her executors, with judgment for plaintiff. The court placed its decision upon the ground that the case made out was one where there was a moral and conscientious obligation, comparing it to the case of Barnes v. Hedley, 2 Taunt. 184, which was a debt void for usury ; but the money had been actually loaned and advanced ; the parties by agreement stripped the transaction of its usury, reducing the debt to the real sum loaned, with legal interest ; and thereupon a promise to pay ; held, a valid and binding promise.

The opinion in Vana v. Wells is rested solely upon the case of Lee v. Muggeridge, without a reference to other authorities, if not without very mature consideration, as the facts of the two cases are very unlike, and the latter advances views to which we should be slow to give our assent. But the doctrine of Lee v. Muggeridge has been questioned by later decisions, and it is regarded, as it is, an exceptional case. We are of the impression from a careful study of that case, that the conclusion reached was greatly influenced by the terms of the instrument by which the wife held her seperate property.

Lord Tenterden, C. J., in Littlefield v. Shee, 2 Barn. & Adol. 831, referring to the case of Lee v. Muggeridge, said : " I must also observe, that the doctrine that a moral obligation is a sufficient consideration for a subsequent promise, is one which should be received with some limitation." In a note to Wennall v. Adney, 3 Bos. & Pul. 249, it is said, " An idea has prevailed of

late years that an express promise, founded simply on an antecedent moral obligation, is sufficient to support an *assumpsit.* It may be worth consideration, however, whether this proposition be not rather inaccurate, and whether that inaccuracy has not in a great measure arisen from some expressions of Lord Mansfield and Mr. Justice Buller, which, if construed with the qualification fairly belonging to them, do not warrant the conclusion, which appears to have been rather hastily drawn from them." Proceeding in a lengthy note to review the decisions on the subject, it is further stated in the same note : " Indeed it is clear from Lloyd v. Lee, 1 Stra. 94, and Cockshott v. Bennett, 2 T. R. 763, that if a contract between two persons be *void,* and not merely voidable, no subsequent express promise will operate to charge the party promising, even though he has derived the benefit of the contract. Yet according to the commonly received notion respecting moral obligations and the force attributed to a subsequent express promise, such a person ought to pay. An express promise, therefore, as it should seem, can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision." The note concludes: " that an obligation to pay in one right, even though it be a legal obligation, and coupled with an express promise, will not support an *assumpsit* to pay in another right."

Lord Denman, in Eastwood v. Kenyon, 11 Adol. & Ell. 438, approves of the foregoing note, and says : " that the case of Lee v. Muggeridge, must be allowed to be decidedly at variance with the doctrine " of that note. He also regards the expressions of Lord Tenterden in Littlefield v. Shee, as amounting to a dissent from the

authority of Lee v. Muggeridge, and he further seems to think it remarkable that neither in the latter case, nor in Cooper v. Martin, 4 East. 76, was there any allusion made to the learned note referred to and quoted above.

The doctrine of the foreging note is quoted and approved in Geer v. Archer, 2 Barb. 420. It also received the emphatic approbation of Mr. Justice Spencer, in Smith v. Ward, 13 Johns. 257. The same doctrine is substantially asserted by Bronson, J., in Ehle v. Judson, 24 Wend. 97, and such is declared to be " the settled rule " in Geer v. Archer, in which the court say : " It forms a criterion at once safe, certain, and easy to be understood and applied." In that case it is said, the test is, " could it not have been enforced before it was barred by the legal maxim or statute provision ?" Watkins v. Halstead, 2 Sandf. 311, was an action against a *feme sole* upon a promise after discoverture to pay for goods purchased while a *feme covert.* In an opinion showing an examination of all the authorities, the court say : " The idea cannot be tolerated, that a precedent consideration can support a subsequent express promise, when the law not only cannot raise any implied promise from such a consideration, but where even the express promise, made when the consideration originated, would be void," and the opinion concludes, " On the whole, we are of opinion, that the precedent consideration in this case, cannot support the subsequent promise ; and we hold with Lord Tenterden, in Littlefield v. Shee, that the doctrine, that a moral obligation is a sufficient consideration for a subsequent promise, is one which should be received with some limitation."

Story, on Contracts, § 466, referring to the rule as to moral consideration, says : " A qualification to this rule, however, obtains in cases where there was originally a sufficient valuable consideration, upon which an

action could have been sustained, but were, in consequence of some statute or positive rule, growing out of general principles of public policy, the right of action is suspended, and the party is exempted from legal liability. In such cases, the moral obligation is sufficient to support an express promise, though it will not raise an implied promise," and he says: "This exception includes all promises barred by the statute of limitations or discharged by the bankrupt or insolvent law; and promises by an adult to pay debts contracted during his infancy; and promises by a drawer of a bill of exchange, or by an endorser of a bill or note, to pay it, although he may not have received such notice as would render him legally liable therefor;" but between these cases and the one at bar, there is a clearly defined distinction.

The court in Mills v. Wyman, 3 Pick. 207, observes: "It is said a moral obligation is a sufficient consideration to support an express promise; and some authorities lay down the rule thus broadly, but upon examination of the cases we are satisfied that the universality of the rule cannot be supported, and that there must have been some pre-existing obligation which has become inoperative by position of law, to form a basis for an effective promise. The cases of debts barred by the statute of limitations, of debts incurred by infants, of debts of bankrupts, are generally put for illustration of the rule." Unlike these cases, in the one at the bar, as in Geer v. Archer, " the supposed obligation which is invoked in support of the promise, is most clearly one which never could have been enforced in any tribunal known to our law," and herein lies the true grounds of defence to this action. The contract sought to be revived and enforced is void, *ab initio*, void at the common law, and void, as unauthorized by statute, nor is there resting upon the defendant, any moral or conscientious obligation to perform the original under-

taking. A *feme covert* can acquire property under our laws only for cash, and the purchase of a steamboat on credit is so entirely contrary to the spirit of recent legislation for the protection of married women, and so clearly unauthorized by the enabling acts of the last few years, that such a transaction fails to commend itself to the favor of the courts, or to impose a claim upon the conscience of the party.

By all the text writers and adjudications, a void contract is incapable of revival and ratification by a subsequent promise. Lloyd v. Lee, 1 Strange, 94, and cases therein cited; 8 Adol. & Ell. 442, and cases; Chitty on Cont. (4th Am. ed.) and cases in notes; Greenl. Ev. § 107; Addison on Cont. 11, 74, 702; Tyler on Infancy and Coverture, 444, § 317; Story on Bills of Exchange, § 182; Nash v. Russell, 5 Barb. 556; Gaulding v. Davidson, 26 N. Y. 604. And this is the sum of the argument. To this rule there cannot be said to be exceptions strictly, though there are exceptional cases. Such was the case of Lee ·v. Muggeridze. Barnes v. Hadley was not by any means exceptioned, for there the original undertaking being usurious, the parties destroyed the evidence of the indebtedness, and another note was given for the money actually loaned, constituting a new, independent, and valid arrangement, based upon a valuable consideration. Were the steamboat for which these bills of exchange were accepted, now in existence, and in the possession of the defendant in the action; and were the parties to destroy these acceptances, and in their stead, substitute other evidences of indebtedness, pursuant to a new undertaking, this case would then be more nearly like that of Barnes v. Hadley. Gaulding v. Davidson, 26 N. Y. is exceptional, but does not militate against the doctrine herein advanced. In that case a *feme covert* was a sole trader, representing herself to be a *feme sole*, buying and selling goods as such, without any knowledge on the part of her credit-

ors that she had a husband living. Her business was under her own exclusive control, and for her sole benefit. Being indebted for goods thus bought and sold, she executed her notes. Afterwards and before suit, her husband died, after which, she promised to pay. To a declaration setting forth these facts, she demurred, and the court of appeals directed a judgment for the plaintiff on the demurrer, the defendant, of course, having leave to plead. Opinions were delivered by three of the judges of the court, one of whom said the recent changes made by the legislature in the law affecting husband and wife, were inapplicable to the case, and he said further, "I will add that the fact is controlling with me, that the defendant personally received a valuable consideration for the money she has promised to pay," while the third, based his opinion expressly upon the statutes of New York, passed in 1849, in respect to the rights of married women, the transactions involved in the litigation having taken place in 1852. The facts were exceptional, and presented a case wherein there was clearly a moral and conscientious obligation resting upon the defendant to pay. Trover or replevin were manifestly the proper remedies of the vendors in that case, but being ignorant of the existence of the husband until too late to resort to those actions, suit was brought upon the notes, setting out all the facts, including the subsequent promise, and the court held the cause of action, stated in the declaration, a good one, or, as we infer, *prima facie*, sufficient only. Judge Balcom in his opinion said: " I am aware the general rule is that a moral obligation is not alone sufficient legal consideration to support a promise," and referring to the rule given in the note to 3 Bos. & Pull. 249, added: " But this rule is too broad, or at least there are exceptions to it." And we may remark of that whole case, that it was exceptional, involving a claim binding upon the conscience of the party, peculiarly meri-

torious and just. In Nash v. Russell, 5 Barb. 556, the rule is reported as sound, that, "A mere moral obligation, though coupled with an express promise, is not sufficient consideration to support a bill between the same parties." It was held in May v. Sperry, 6 Cush. that a note, promise, or debt, is not destroyed by a discharge in bankruptcy, and if it were, say the court, "it not only could not be revived or renewed, but it could not be a consideration for a new promise." In the class of cases to which the one at bar belongs, the action is based upon the subsequent promise, whereas, in the cases capable of ratification or revival, the action and judgment must be upon the original contract or indebtedness. 6 Cush. 242. Story, on Bills of Exchange, § 182, states the doctrine under discussion with exact precision: " It has, indeed," says the learned author, " in some cases been broadly laid down, that where a man is under a moral obligation, which no court of law or equity can enforce, and promises, the honesty and rectitude of the thing is a consideration. But this doctrine must be received with many qualifications, and is now restricted to much narrower limits. The true doctrine, as now established, seems to be that a consideration, which the law esteems valuable, must in all cases exist, in order to furnish a just foundation for an action." And in illustration of this doctrine the author further says: " Where there is a precedent duty, which would create a sufficient legal or equitable right, if there had been an express promise at the time, or where there is a precedent consideration, which is capable of being enforced, and is not extinguished, unless at the option of the party, founded upon some bar or defence, which the law justifies, but does not require him to assert, then an express promise will create or revive a just cause of action." In further illustration, cases of infancy, statutes of limitation, and discharge in bankruptcy, are cited: " So," he continues, " if a contract

is voidable, but founded in a consideration otherwise valuable, a sufficient or express promise to pay it, will support and confirm its obligation, but not if it be originally void." And "a promise by a woman, who is sole, to pay a debt which she had previously contracted, while she was married and under coverture, would not be valid, because such a contract, on her part, is *ab origine* void, and not merely voidable."

Kennerly v. Martin, 8 Mo. 698, was a suit by a physician to recover the amount of a bill for professional services rendered in part to the slaves of the defendant, during the life of her husband, basing his right of action upon the express promise of the widow, after the death of her husband. The court said, there were cases in which a moral obligation had been considered a sufficient consideration to support a subsequent express promise to pay, but that the promise must be unequivocal, and the declaration must set forth all the circumstances, and must show that the money is in conscience due." In that case, it was held that there was no moral obligation whatever, for the defendant to pay a debt contracted during her husband's lifetime, and judgment was rendered for the defendant.

*Vide,* also, Chitty on Contracts, 4th Am. ed. 40, 40 *a.* and cases cited in notes, where the foregoing doctrines are reported. Cook v. Bradley, 7 Conn. 57.

The question of moral obligation as the basis of a promise to pay, is one upon which the courts have been unable to lay down a definite, or ever a satisfactory rule, and we shall not undertake to reconcile the multiplicity of cases and conflict of views, as the question does not at present arise upon the record before us. The case presented is one not only void at the common law, but contrary to the policy and spirit of the legislation of this state for the protection of the property of married women.

Counsel in his argument has referred to the probable

action of a court of equity, were the steamboat, for the purchase price of which these acceptances are alleged to have been given, is in existence, and in the possession of Mrs. Porterfield. Undoubtedly, in a proper proceeding, the property would be decreed to be sold in payment of the purchase money, or to be delivered to the vendor.

This suggestion of counsel opens a wide field for investigation, not arising in this case, and not intended to be invaded in this discussion. It is sufficient to say, that an attempt in equity to charge this claim upon the estate of Mrs. Porterfield, would meet with no less serious obstacles than in a court of law, as the case is wanting in the elements to charge her estate. Yale v. Dederer, 22 N. Y. 450; Tyler on Inf. and Cov. 444 *et seq*; White v. Story, 43 Barb. 124; Caldwell v. Savage, 30 Ala. 283; Major v. Symmes, 19 Ind. 117; Hicks v. Johnston, 24 Ga. 194.

*The judgment is reversed and cause remanded.*

Judge SIMRALL having been of counsel, takes no part in the decision of this case.                    T.