Tice *against* Annin.

Annin *against* Akin and Tice.

If a mortgagee sells the equity of redemption, by execution at law, to satisfy the mortgage debt, and then proceeds at law against the mortgagor's person or other property, to obtain the residue of the debt, unsatisfied by the sale of the equity of redemption, or if the whole debt is satisfied by such sale, he must assign over to the mortgagor the bond and mortgage, to enable him to compel the purchaser of the equity of redemption to refund him the debt, out of the land mortgaged.

But if the mortgagee, by assigning the whole debt and mortgage to the purchaser of the equity of redemption, has put it out of his power to assign them to the mortgagor, the debt will be extinguished in the hands of the purchaser. The mortgagor, however, will not be entitled to receive the purchase money, for the purchaser will be considered as having bought the land for the price paid, subject to all the residue of the debt secured by the mortgage, beyond what was extinguished by that purchase money.

This Court will restrain a mortgagee from proceeding at law to sell the equity of redemption; or put him to his election, either to proceed directly on his mortgage, or to seek other property, (where the rights of creditors do not interfere,) or the person of the debtor, for the satisfaction of the debt.

*February* 10th.

[ * 126 ]

THE *original* bill was filed on the 21st of *June*, 1810, to foreclose a mortgage given by the defendant *Annin*, on the 1st of *August*, 1808, to secure the payment of three bonds, for 500 dollars each. The first bond had been paid; the principal and interest on the second became due the 21st of *May*, 1810; and the principal of the third was payable on the 21st of *May*, 1811, with interest. The *two last bonds were alleged to have become forfeited by reason of the nonpayment of the principal and interest of the one, and of the annual interest of the other. After the bill was filed, and before the defendant answered, the defendant offered to pay the second bond, with the costs, but the plaintiff refused to accept the offer, unless the third bond was also paid; though the interest thereon was not made payable at any particular time, or before the principal.

The *cross* bill, which was filed on the 23d of *December*, 1811, stated, that when the original bill was filed, neither principal nor interest was due on the third bond. That in *September*, 1810, before the answer in the *original* suit, the defendant *Tice* brought an action at law on the second bond, and obtained judgment in *August*, 1811, on which he issued execution, and sold the mortgaged premises to the defendant *Akin*, subject to the mortgage, for 310 dollars.

That in *June* or *July*, 1811, *Tice* also brought an action at law on the third bond, and recovered judgment.  That the sheriff executed a conveyance to *Akin*, the purchaser under the execution, and received the 310 dollars, which he paid to *Tice*.  *Akin*, under his deed, brought an action of ejectment at law against *Annin*, and recovered possession of the premises; that the sale being subject to the mortgage, &c., *A.* ought to discharge the plaintiff *Annin*, and pay to her the 310 dollars, and cancel the bonds, &c.  The plaintiff prayed an injunction, &c.

*Akin* and *Tice* denied that the premises were sold by the sheriff subject to the bonds and mortgage, but *Akin* admitted, that the sheriff, at the time of sale, stated, though not to him particularly, the amount to be raised on the execution, and that there was a mortgage on the premises, besides the judgment, for 700 dollars; but that the sheriff did not intimate that the money, on the sale, was to be paid to *Annin*, nor that *Akin* was to satisfy *Tice* for the amount of the execution and the mortgage; that *Tice* sold and assigned *to him all his interest in the two bonds, judgments, mortgages, suits, &c.; so that he united, in himself, the legal estate, by assignment from the mortgagee, and the equity of redemption, by purchase at the sheriff's sale, under the execution.

It was alleged, on the part of *Tice* and *Akin*, that the purchase from the sheriff was made subject to the charge of the third bond only; and, on the part of *Annin*, that *Akin* purchased, subject to the whole mortgage debt.  The testimony on this point was, in some degree, contradictory, as to what was the declared understanding of the parties at the time of the sale by the sheriff; but from the view taken of the case by the Court, it is not necessary to detail the evidence on this point.

*Annin* alleged that *Tice*, by quitting his bill of foreclosure, and proceeding at law to a sale of the equity of redemption, under the judgment and execution, was thereby bound to look exclusively to the land for all his debt.

*Akin* said he was willing to relinquish his right to the land, on receiving the principal and interest due on the bonds, and the costs of the several suits; and to accept an order for 500 dollars on *D. Delavan*, mentioned in the pleadings, as so much payment.

*Munro*, for *Tice* and *Akin*.

*Riggs*, for *Annin*.

THE CHANCELLOR.  These causes were brought to a

1816.

TICE
v.
ANNIN.

[ *127 ]

1816.

Tice
v.
Annin.

[ * 128 ]

If a mortgagee, instead of resorting to a bill of foreclosure, seeks to collect his money out of other property of the mortgagor, his proceeding will be stayed, or he will be compelled to assign over the bond and mortgage to the mortgagor.

So if the mortgagee himself sells the equity of redemption by execution at law.

hearing together, and they relate to one and the same transaction.

When the cross bill was filed, there was then pending the judgment and execution at law on the second bond, on which there was a credit of 310 dollars levied by the sale of the equity of redemption; and there was also pending *the suit at law on the third bond, and an ejectment suit at law by *Akin*, the purchaser, and the original bill in this Court, and which was then at issue. The questions arising out of this state of things, are full of embarrassment and difficulty.

If a judgment creditor, *other than the mortgagee*, sells the equity of redemption, the mortgagor reaps the benefit of that equity, by having it applied towards the payment of his other debts, and the mortgage debt remains, without any confusion, as a distinct and separate encumbrance; and if the mortgagee, in such a case, should elect to proceed against the original debtor at law, instead of seeking to foreclose his mortgage, and should endeavor to collect his money out of other property of the mortgagor, this Court must either stay such a proceeding, or compel him, upon payment, to assign over his debt and security to his debtor, so as to enable the debtor to indemnify himself out of the mortgaged premises. The one course or the other would be indispensable to prevent the purchaser of the equity from obtaining and holding the whole interest in the land, when he purchased, and paid only the value of, the equity of redemption. If the mortgagee himself, as in the present case, sells the equity of redemption by execution at law, to satisfy the very debt for which the mortgage was taken, and he then proceeds at law against the mortgagor's person, or other property, for the residue of the debt unsatisfied by the sale of the equity, or if the whole debt was satisfied by the sale of the equity, the same consequence must follow. He must, at all events, on being paid, assign over to the mortgagor the bonds and mortgage, to enable him to compel the purchaser of the equity to refund him the debt out of the land charged. If, however, the mortgagee, as in this case, has put it out of his power to assign, by placing the whole debt and security in the hands of the purchaser, a new and greater difficulty arises.

[ * 129 ]

But if the mortgagee cannot, in such case, assign over the debt and security, the purchaser of the equity of redemption will be deemed as

*To allow the purchaser to go on and compel the mortgagor to pay the mortgage debt to him, and then to compel him to assign over the mortgage to the mortgagor, so as to enable him to recover the money back again, would be an idle and absurd proceeding. There seems to be no other alternative, but to consider the debt as extinguished in the hands of the purchaser. He purchased only the equity of redemption, and, of course, subject to the mortgage debt,

102

and his purchase of that debt was nothing more than an extinguishment of the encumbrance upon his land.

I do not feel myself at liberty to go so far as to say, that the plaintiff in the cross bill is entitled to the 310 dollars, for this would be rendering the whole suit and sale at law, by the mortgagee, a mere farce. The sense of the thing (if indeed there be any good sense in allowing the mortgagee himself to proceed and sell the equity, by execution at law, without proceeding on his pledge) is, that the purchaser, *Akin*, bought the land for 310 dollars, *subject to all the residue of the debt secured by the mortgage, beyond what was extinguished by that purchase money.* Even this point is attended with great perplexity. Unless the purchaser bids *more* than the whole amount of the debt charged on the land, he, in fact, gives nothing for the equity. He obtains the entire interest in the land, merely for the amount of the encumbrance. Thus the debt, as in this case, may be 1,200 dollars. He bids 310 dollars for the equity of redemption, and by discharging the residue of the debt, or 890 dollars, he acquires an unshaken title. If the equity of redemption be of any value, then the mortgagor is, by that operation, devested of that equity, without any consideration. So, if the mortgagee himself purchase in the equity at the sheriff's sale, he never bids beyond the amount of his debt, and if he can hold the land against the mortgagor, by uniting in this way the legal and equitable titles, he will have acquired it for the price of his debt, and no more. The equity of redemption is absolutely sacrificed.

*The true and only remedy for all this mischief is, to prevent such sales ; and I think I shall be inclined, if the case should arise hereafter, to prohibit the *mortgagee from proceeding at law to sell the equity of redemption.* He ought, in every case, to be put to his election to proceed directly on the mortgage, or else to seek *other property,* (if the rights of other creditors do not interpose,) or the person of the debtor, to obtain satisfaction for his debt. I see no other way to prevent a sacrifice of the interest of the mortgagor ; and it is manifestly equitable, that the mortgagee be compelled to deal with his security, so as not to work injustice.

To compel the payment over to *Annin* of the 310 dollars, would be increasing, by so much, the price of the land to *Akin;* and *perhaps* would be charging him with a greater price than he intended, or would have been willing to give for the land, or, perhaps, than it was worth. As the case stands, I cannot interfere further than I have suggested. I am accordingly of opinion, that the original bill be dismissed with costs, to be paid by the plaintiff. The plaintiff went on at his own peril, after *September,* 1810, when the amount

of the second bond and costs were refused; and as he, after that time, took another remedy by an action at law, and has since disabled himself from proceeding by assigning over the mortgage to *Akin,* and as *Akin* cannot proceed, since he unites the rights both of mortgagor and mortgagee, the suit is at an end by the act of the party who brought it. I am further of opinion, as to the cross bill, that a perpetual injunction be granted as to any further prosecution on the second and third bonds, and on any verdict, judgment, or execution, on either of them; and that the injunction, as to the ejectment suit, be dissolved; and that no costs be taxed by either party as against the other.

Decree accordingly.

