## J. H. Viser *v.* Narcissa Scruggs.

Married Women, Contract of—Mississippi Statute.—The S'atute resrecting the separate estate of married women, and their power over it, is enablin g, and confers a *legal* capacity to make the class of contracts therein mentioned.

Same—Same—Power of Feme Coverts to borrow money.—A feme covert has not the general power to borrow money, although it is specified in the note (signed by herself and husband) to be for one of the purposes for which she may make a valid contract. If, however, it is shown that the money was actually used for *such* purpose, her promise to repay would be binding. The actual use to which the money was put makes the liability.

Same—Liability of the Husband.—A note given for money loaned the wife, signed by the husband and wife, may not be binding on the wife, but it is nevertheless good against the husband. In such case a deed in trust on the wife's property encumbers the income.

Appeal from the chancery court of Alcorn county. Hon. A. E. Reynolds, Chancellor.

Appellee, complainant, filed her bill in the court below to restrain John H. Viser, and the other defendants, trustees, from selling, as her property, a certain leasehold estate, under an alleged deed of trust, named in the bill, under which, sale of the premises was advertised, to secure the payment of certain notes, which together with the deed of trust was not enforcible against her, because executed by her during coverture, and because the deed was never properly acknowledged. Viser filed an answer and cross-bill, admitting that the trust deed was defectively acknowledged, but setting up a subsequent acknowledgment and registra-

tion of the same deed, as curing the original defect. The answer and cross-bill charges that the money was loaned to Mrs. Scruggs on her own credit, for the purpose of buying household and family supplies; that Viser well knew that Scruggs, the husband of Mrs. Scruggs was insolvent, and he would not trust him; that the recitals in the deed of trust are conclusive of the allegations that the money was loaned to Mrs. Scruggs, and not to her husband.

The answer expressly denies that there was any surety-ship in the case, but charges that the debt was Mrs. Scruggs' own original debt, contracted by her, for her own benefit. It is alleged that Viser paid the money to, and dealt with Pope Scruggs, (not the husband) the sole and only agent of Mrs. Scruggs, in good faith, believing the representations that it was going to her, as the person borrowing it. The answer further charges that, after the subsequent death of her husband, Mrs. Scruggs, being *feme sole*, promised Viser to pay the notes which he in his answer and cross-bill, seeks to enforce. The answer admits the usury which the bill charges, and tenders abatement.

Mrs. Scruggs, answering the cross-bill, insists that the de-fective acknowledgment has been cured by subsequent ac-knowledgment; that everything done by her in relation to the notes and deeds of trust, was done at the instance and request of her husband, who did not disclose to her the con-tents thereof. She admits that the money was loaned to her, but denies that she needed or borrowed the money for the purpose of buying supplies. She admits that after the death of her husband, she promised to pay the debt, but that such promise was made in ignorance of her rights.

By leave of the court, Mrs. Scruggs filed an amended bill, charging that she had a leasehold interest in the property named in the deed of trust, the fee of which was in the Memphis and Charleston Railroad Company, but that she had, before the date of the alleged acknowledgment of the deed of trust, surrendered the lease to the railroad company. The Chancellor granted the prayer of the bill, and declared

a cancelation of the deed of trust and notes, from which decree the defendants sued out a writ of error.

*Green & Pickens,* for appellant:

Mrs. Scruggs is estopped, by her fraud, to deny the validity of the debt. Beird and wife v. Heath, 6 How. (U. S.), 239; Hyde *et al.* v. Warren *et al.,* 46 Miss., 13; 6 Ves. Jr., 180, 193; 3 Allen, 545; Story Eq. Jur., 385. She was the same as a *femme sole* dealing with her separate estate within the statute. Russ v. Wingate, 30 Miss., 440; Williams and wife v. Bank of Louisiana, 46 Miss., 618.

The good and valuable consideration on which the transaction was based, though she was incompetent at the time, on account of coverture to contract, is sufficient to support a new promise, made after she became *femme sole.* Lee v. Muggerridge, 5 Taunt., 36; Franklin v. Beatty, 27 Miss., 347; Chitty on Contracts, 48, 49, 8 Ala., 399; 14 Johns., 381; 24 Wend., 99; James v. Fisk, 9 S. & M., 144; Sessions *et ux.* v. Bacon *et al.,* 23 Miss., 272; Whitworth *et al.* v. Carter, 43 Miss., 61; Foxworth v. McGehee, 44 Miss., 430.

*H. A. Barr,* on the same side:

The doctrine of estoppel is extended to the case of a party whose conduct will effect any unjust result. Dain v. United States, 16 Wall., 4. Mrs. Scruggs is guilty of a fraud for which coverture will not furnish an excuse. 2 Vern., 150; Evans v. Bicknell, 6 Ves. Jr., 181; Savage v. Foster, 9 Mod., 37; Cory v. Getzcker, 2 Mad., 51; Evrony v. Nicholas, 2 Eq. Cas. Ab., 489; 6 How. (U. S.), 228; Hyde *et al.* v. Warren, 46 Miss., 30; Ames v. Foster, 3 Allen, 545, Pendleton v. Galbreath *et al.,* 45 Miss., 43.

That the promise to pay the debt made after her husband's death, is binding on her and the property secured by the deed of trust, see Franklin v. Beatty, 27 Miss., 355, 356; Vance v. Wells, 8 Ala., 399; 24 Wend., 99; Lee v. Muggerridge, 5 Taunt., 36; 1 Parsons on Contracts, 358; Carpenter

v. Longan, 16 Wall., 274 ; Enton v. Friday, 2 Rich. (S. C.), 427 ; 10 N. H., 210 ; Pond v. Clark, 14 Conn., 334.

The court below exceeded its jurisdiction under the pleadings, in canceling the deed in trust. Such was not the prayer of the bill. 2 Story Eq. Jur., 794, 711.

*Sale & Dowd and F. E. Whitfield,* for appellee :

1. There is nothing in the married woman's law which authorizes her to borrow money for any purpose. If this contract stands, she may be forced or persuaded to embark in the hazzards of trade and speculation. It will overturn the beneficial policy of the law. Whitworth v. Carter, 41 Miss., 61 ; Dunbar v. Meyer, ib., 684. He who seeks to subject the property of the married woman to the performance of a contract, must make a case by his pleadings, and sustain it by proof, bringing it strictly within the provisions of the statute. Ib., 685 ; Harden v. Phelan, 41 Miss., 114 ; Stephenson v. Osborne, ib., 119 ; Foxworth v. Magee, 44 Miss., 430 ; Hardy v. Cobb, ib., 699 ; Bank of Louisiana v. Williams *et ux.*, 46 Miss., 623 ; Bendham v. Galbreath, 45 Miss., 43. This court has already decided the main question in this case in the case of Helm v. Bowman *et ux.*, Op. Book J., 526. See, also, Wilkerson v. Cheatham, 45 Ala., 338, 343.

2. It is clear that Mrs. Scruggs had no separate estate on the 15th of April, 1871. It has been repeatedly decided that a married woman cannot bind herself personally, but only her estate, in the statutory mode; and unless it is averred and proved that she owned a separate estate in Mississippi at the time the contract was made, it is void. Bank of Louisiana v. Williams *et ux.*, 46 Miss., 623.

3. It is the universal principle that a married woman is not estopped to deny the recitals of her deed or any contract she may make. 44 Miss., 398 ; 34 ib., 173 ; 41 ib., 616 ; 9 S. & M., 489 ; 6 S. & M., 358 ; 1 Greenl. (Me.), 284, 285 ; Hermann on Estoppel, 215–216.

4. The promise of Mrs. Scruggs after the death of her hus-

band, is void, and not binding upon her.   The rule is well settled that a promise or undertaking, void *ab initio*, is incapable of ratification.   An express promise can only revive a precedent good consideration which might have been enforced at law, but can give no original right of action, if the obligation on which it was founded never could have been enforced at law.   1 Bishop on Married Women, 39 ; 1 Parsons on Contracts, 361 Goulong v. Davidson, 18 Barb., 438 ; Vortenburg v. Hoffman, 15 ib., 28 ; Chitty on Contracts (10th Am. ed.), 47, 48.

Simrall, J., delivered the opinion of the court:

The liability of a married woman for her contracts has been presented in such various forms, and has been so often discussed and adjudicated by the courts, that it might have been supposed that principles had been established which would be of easy application to any complication of circumstances.   It is not now controverted that the various statutes respecting a married woman's separate property, and her power of disposing of, and binding it and herself, by contracts, are enabling ; in derogation of the rights of the husband as at common law, and confer upon her *legal* capacity which she did not before have.   In determining, therefore, her responsibility for a debt, it must be ascertained what was the subject matter and consideration.   If it comes within the statute, and is of the class of those for which she can bind her separate estate, then it is a *legal* demand, enforcable in a court of law.   The statutes so far as they go, relieve from disability and confer *legal* capacity.

Considering the note and deed in trust in this case, as the promise and security therefor, given by the wife, for a loan of money, by Viser to her, two enquiries arise : First, has she capacity to borrow money at all ? and, secondly, how is the question affected if borrowed for any of the purposes set forth in the statute ?   The purpose and consideration stand out prominently as the test and criterion of the validity of the contract.   It does not at all advance the argument whether

the promise is by promissory note, bond or oral. If the married woman can incur the debt at all, she may make a memorial of it in any form and dignity of writing.

Manifestly, a married woman has no power to bind her estate for borrowed money. For that is not one of the obligations which she may incur, within either the 24th or 25th sections of the statute of 1857. Code, p. 336. She may contract "for family supplies, or necessaries, wearing apparel for herself and children, or for their education" * * * etc. Last clause of section 25. If she is under obligations already to pay such a debt, she might, in order to discharge it, borrow money and so apply it. The lender of the money in such a case would be substituted to the merit of the debt of the original creditor. The transaction would not impose any additional burden on her property. The effect would be merely to shift a meritorious debt from one person to another. It might be very beneficial to her by avoiding the vexation and costs of a suit, and procuring a postponement until her resources would be available.

She might borrow money, for the purpose of defraying the expenses of herself and family, and the education of her children, and apply it to expenses, as they from time to time arise. The debt in this instance would be to the lender, instead of to the person who furnished the family necessaries, and instruction to the children.

The general proposition remains true, that the wife can not borrow money; and if that were all that was shown, no liability would be imposed on her estate. But if the money was actually used to pay debts already existing for the domestic purposes named in the statute, or, if borrowed so the ready money might be paid for such expenses, and was paid, it would be within the equity and policy of the statute to hold her estate bound to the lender.

The merit and validity of such a contract depends exclusively on the fact, that the money, in the first case actually extinguished a charge upon her estate, and in the second, that it was actually used to defray the expenses and support of the

family. It is the use to which the money is put, and that only, which makes the case meritorious. This precise question was adjudged in Brown *et ux.* v. Thomas E. Helm, MSS. Opinion, book I, pp. 523–4–5. It was there conceded that a *femme covert* did not have the power under the statutes to borrow money; but, said the court, "if the money was used in making purchases, or discharging obligations which were within her power to make or incur, and the separate estate shall have received the benefit of the money, she would be liable. But in no event should she be liable for any more of such money than was used by her as aforesaid."

We think the doctrine of this case is within the manifest equity, and intendment of the statute, and does not expose the separate estate to unnecessary risks, nor does it really enlarge the powers of the married woman; whilst the principle is reasonable and just, we would not be disposed to push it further, but would be inclined rather to insist that each case should be clearly brought within its range and operation.

The principle is, that whilst a married woman cannot bind her estate for money loaned, nevertheless, if the lender can show that it was *actually* applied to discharge a debt, for which the separate estate was already bound, or to make purchases, for the enumerated purposes, for which she might charge her estate, then the lender may recover.

In making the loan Viser took the risk, that Mrs. Scruggs would use the money for the purposes recited in the note, " of purchasing family supplies and necessaries, and wearing apparel for herself and children." If the money was not appropriated to exonerate her estate from valid debts, or to improve her property, or to maintain the family, or for some other object for which she could incur liability, there is no obligation resting upon her, or her estate, which can be enforced. The appellant, Viser, has wholly failed to show such use of the money. It would follow then, that unless Mrs.

Scruggs is responsible upon some other view of the case, the decree of the chancery court is right.

It has been strenuously pressed in argument by the counsel for the appellant, that Mrs. Scruggs is bound by the recitals in the note and deed in trust, and that they operate by way of estoppel. If such were the effect, then Mrs. Scruggs could not deny that the loan was made for the purpose named. But she can no more borrow money for that purpose than any other. The circumstance that charges her estate is, not the intent or use to which the loan was to be put, but how was it used, was it actually employed to exonerate the estate from debt, or to meet expenses for which the estate would be bound? If not, then the estate is not chargable. It is not a question of good faith, but a capacity to make a particular contract. The wife cannot bind herself for a loan of money. But whilst that is so, if it was really employed for the advantage of the estate and family, as allowed by law, then there arises as strong an equity in favor of the lendor, as if the " necessaries " for which it had been paid, had been bought upon a credit, and the seller was suing for the price. The single and sole merit, which Viser could have, would be that Mrs. Scruggs had so used the money. He took, therefore, the risk that she would so apply it. If she passed it to her husband for his use, as is proved, Viser occupies no better position than if he had merely loaned the money without a specification of the purpose. Suppose Mrs. Scruggs had given a covenant, that she would apply the money as recited in the note, could a suit be maintained upon it? That would not be pretended. Yet, such a covenant amounts to an agreement, so to apply it.

The recital of the objects for which the money was procured, gives no validity to the promise. The note would have been just as good, if it were omitted altogether. If Mrs. Scruggs had solicited the loan, stating that she wanted it for the support of her family, and the note had been a simple promise to pay, without such recital, it would be this

transaction in legal effect.   The right of recovery would depend on the *fact* of how the money was used.

The strongest light in which the case can be put for the appellant, is that Mrs. Scruggs was under a contract to use the money for the purposes named in the note.   But the answer to that is, she had no capacity to make such a contract. As to that she is under disability.

The whole case resolves itself into this, Viser trusted Mrs. Scruggs, that she would expend the money for her family uses; if she did, he would have cause of action, if she did not,· her estate would not be bound.   He was bound to see to the appropriation of the money.

This brings us to the conclusion, that the note, to Viser, and the deed in trust to secure it, considered exclusively with reference to her power, under the statute, to borrow money, would be void and of no effect.

The next question : is the encumbrance a valid security, regarding the note as the debt of her husband?

It was ruled in Sessions *et ux.* v. Bacon *et al.*, 23 Miss., 273, and other cases, that inasmuch as the wife had the power under the act of 1839, to convey her property, by absolute sale and conveyance, she had the lesser power of making a conditional sale or conveyance; that she could mortgage for her husband's debt.   This construction enabled her to pledge the entire separate property, its *corpus*, the title in fee.   This decision was made in 1852.   Prior to this in Berry v. Bland, 7 S. & M., 83, and Frost & Co. v. Doyle *et ux.*, ib. 75–76.   It had been held, that the debts of the wife could not be chargeable upon her separate estate, held under the statute, except in the mode therein mentioned.

It was in this condition of the law, that the revision of 1857, was made, which enacts on this subject: "And no conveyance or encumbrance for the separate debts of the husband shall be binding on the wife beyond the amount of her income."   Last clause of sec. 23, p. 336, Code.   The first clause provides that the wife's property shall not be taken for the husband's debts, "nor shall such property, or

any part   *   *   be sold, conveyed, encumbered or mort-
gaged   *   *   unless the wife shall join in the convey-
ance." We take the last clause as a limitation upon the
right to encumber or mortgage for the separate debts of the
husband.

Although the notes are not obligatory on Mrs. Scruggs,
there is no doubt they were on the husband. Whitworth v.
Carter, 43 Miss., 66. Being void as to her, does that make
them the separate debts of the husband within the statute?

We think (aside from this) that the preponderance of evi-
dence is that the loan was made to the husband on the credit
and faith of the deed in trust on the wife's property.

In her original bill, Mrs. Scruggs gives that complexion to
the transaction. " She merely signed the notes and deed in
trust for her husband and as his surety.". In her amended
bill, she makes substantially the same statement: " she was
not present when the consideration was passed between
Viser and her husband; denies that any money was ever
paid to her, or was ever advanced to her to buy family sup-
plies; but admits that the money " was borrowed upon her
name and credit." The negotiations were between Mr.
Scruggs and Viser. Pope Scruggs was sent by the former,
with the notes and deed in trust from Corinth to Oxford,
who there delivered them to Viser, received and brought
back the money and handed it to Mr. Scruggs. The wife, in
the meantime, was in Huntsville, Ala.

The meaning of the words " separate debts " in the
statute, are those debts, for which there is no liability upon
the wife or her property. Debts for which the husband is
alone responsible. Dibrell v. Carlisle, 48 Miss. Rep., 706,
707. In that case the note was signed by the husband and wife,
and secured by mortgage on her property. Part of the note
was for a separate liability of the husband, and part was
valid against the wife. *Held:* That the mortgage pledged the
*corpus* of the property for so much of the debt as the wife
could contract; but as to the residue, which was only obli-
gatory on the husband, it would stand as security on the

" income." Without reference to this case, which was not then reported, though decided several years before by the High Court of Errors and Appeals, this court put the same construction on the statute in Foxworth v. Magee, 44 Miss. Rep.,432, 3, 4.

Under the statute of 1857, the wife may encumber her estate, for all the liabilities, which she can by the statute incur. Such encumbrance extends to the *corpus* of the property. But for the debts of the husband, she can only mortgage or encumber the income.

If Mrs. Scruggs were, through her separate estate, bound for this debt, then the deed in trust would take hold of the *corpus* of the estate to the full extent of her interest. But inasmuch as the debt was the husband's alone, the deed in trust, encumbered no more than the income.

The subsequent promise of Mrs. Scruggs, after she became discovert, did not, and could not, have the effect to vivify and vitalize the debt, so as to give it effect on the encumbrance, to any greater extent than both or either were operative and valid at the time they were contracted and made. That point was considered and ruled in Porterfield v. Butler, 47 Miss., 170 ; *et seq.*

We are of opinion, therefore, that the complainant had an encumbrance and security to the extent of the income of the property embraced in the deed of trust. The debt being usurious, an account should be taken, purging the notes of the usury, and applying the payments as prescribed by statute.

Decree reversed and cause remanded for further proceedings in accordance with this opinion.