THOS. REED et al. vs. LAURA COLEMAN et al.

HUSBAND AND WIFE: *Mortgage by the wife to secure debts of the husband. Effect thereof. Sec.* 1778, *Code of* 1871.

The language of this statute (§ 1778) is, "that no incumbrance for the separate debts of the husband shall be binding on the wife beyond the amount of her income." These words imply a living person. Both

reason and policy demand that a mortgage on the wife's property for separate debts of the husband, which under the statute binds only her income, should be invalid and inoperative upon the death of the wife. Any other construction would practically bind the *corpus* of her estate, which it is the policy of our law and the express provision of the statute to prevent.

APPEAL from the Chancery Court of *Jefferson* County.

Hon. J. M. ELLIS, Chancellor.

The facts of the case sufficiently appear in the opinion of the court.

*W. L. Nugent*, for appellant:

In the case there are two questions to be settled:

1. Is it sufficiently established that the conditions upon which, and the purposes for which the notes were executed are of such a character as to charge them upon the separate estate of Mrs. Wood; and, 2. If this is not true, is the trust deed operative to pass the use of the property until its income pays the debt?

1. The parties litigating are the heirs at law of Mrs. Wood, and, of their own motion, forced the defendants into and before the court, as their own witnesses, to impeach the consideration of the notes, and the answers, being responsive to the allegations of the bill and the interrogatories propounded, constitute the very highest possible evidence. It is not permitted to a party to call in and examine a witness whose mouth the law stops in his own behalf, and, after obtaining his evidence, to ignore it because unfavorable. The complainants cannot thus get rid of their own proof. The competency of the witnesses was waived; the compulsory production of the evidence rested in discretion and judgment, and while Reed could not probably have introduced the witnesses, the complainants, at their peril, were privileged to do so. Brought in by them, the testimony of the witnesses was proper. 13 S. & M., 295; 9 id., 613; 43 Miss., 383; 6 S. & M., 647; 24 Miss., 134; 31 id., 42. Greenfield and Logan were partners of the house of Fellowes & Co., had no interest in the matter at all, and their testimony fully makes out the case if any proof was

needed after the answer was filed denying all the equity in the bill. The peculiar business of their house was to furnish supplies for planters, and that business was transacted by contract, in the mode indicated : by giving notes to the factors for indorsement and sale, the proceeds of which, credited in account, formed the basis of dealings between the parties. No objection to the depositions of these witnesses was made at the hearing, and they were competent. 4 How. (Miss.), 396; 12 S. & M., 130 ; 13 id., 295; 9 id., 613. The complainants evidently rely upon the statement in the trust deed that the notes were given for "money loaned," as avoiding both the deed and the notes, but the reverse of this is true. If the *feme covert* could contract for supplies, she could manifestly contract for the money to purchase them; and the fact being conceded that these notes were given to factors whose peculiar business it was to furnish supplies, it must be presumed that they were given to raise the means with which to purchase supplies, and that the proceeds of the notes were so used. It must be presumed that Mrs. Wood intended to make a valid contract, and did make a contract authorized by law. Certainly it cannot be contended, in the utter absence of all evidence, that the contract is void. Partee *v.* Silliman, 44 Miss., 272.

2. But if the *corpus* of the property is not chargeable with the debt, its income is. This has so often been decided by this court that it is only necessary to refer to the authorities. They all hold that a *feme covert* may charge, by mortgage duly acknowledged, the debts of her husband upon her separate property, and this power is restricted, by the revised code of 1857, to the income, until the debts are paid. There is not a solitary adjudication in conflict with this statement, and the bill proceeds upon the postulate that the trust deed was given to secure the husband's debt. Foxworth *v.* Magee, 44 Miss., 430.

*H. Cassidy*, for appellees, insisted:

1. That the pleadings and proofs show that the assumed contract of Mrs. Wood was an attempt by a married woman to contract for borrowed money, and being *prima facie* void, is no charge

upon the *corpus* of her real estate, and before that can be bound, the parties seeking to subject it must clearly show that the money so borrowed by her has been applied in payment for such articles for which, by statute, she can legally contract. Viser *v.* Scruggs, 49 Miss., 706; Brown et ux. *v.* Helm et al., MSS. Op.

2. That the evidence by which this is attempted is not competent, as being an attempt by Logan and Greenfield, defendants, to establish a claim against her estate in this case. 37 Miss., 458; 44 id., 289; 47 id., 575.

3. That if competent, it is so vague and uncertain as to afford no clear and definite ground on which to judicate a decree for the amount for which she is liable, so as to make such amount, "used by her," a charge on her separate estate.

4. That being void as to her does not necessarily make it the separate debt of her husband, and appellants disclaim that it is such debt, and if it was his debt, the same vague uncertainty and indefiniteness as to amount taints the proof as to James Wood, that characterizes the case as to Mrs. Laura Wood.

5. That this court, from the record, could not render a different decree than that rendered by the chancellor, nor does the record disclose any hope of a different case being made if it is remanded.

CHALMERS, J., delivered the opinion of the court.

The bill was filed by the heirs of Laura Wood, deceased, to have pronounced void a trust deed which their mother had executed in her life-time on her Mount Hope plantation, and also to have declared invalid a conveyance executed by the trustee at a sale made by him under said trust deed. The prayer was that both of said instruments be canceled and vacated, and for a restitution of possession to complainants. The chancellor decreed in accordance with the prayer, and defendants, who were the holders of the debt secured by the trust deed and also the purchasers of the land at the trustee's sale, appeal. The trust deed was executed by Laura Wood jointly with her husband James Wood to C. Fellowes & Co., in 1860, to secure payment of two promissory

notes for $5,000 each, made by the husband and wife jointly and severally, which state upon their face that they were for money loaned. The promissory note of a married woman for borrowed money does not of itself constitute any liability upon her separate estate. If it can be shown that the proceeds of it were actually used for any of the purposes for which she may by law bind her property, the note may be enforced as constituting a binding promise to repay. It is the use made of the money, and not the execution of the note that binds her estate. In the case at bar, it appears that there was in fact no money loaned or borrowed. The notes were only taken to represent advances of money and supplies intended and expected to be thereafter made by Fellowes & Co. to Mrs. Wood. An attempt was made to show that the wife did receive the advances for the benefit of her plantation, and family, but we think that the attempt was a failure. The books of Fellowes & Co. were destroyed during the war. The members of the firm could not testify as to how much was actually advanced on the trust deed, nor what proportion was money, nor what groceries or dry goods, nor indeed what were the kind and quality of supplies furnished. They did not profess to know what actual use was made of the advances, nor for what purposes they were obtained, except that Wood and wife said that they desired them for her plantation and family. This is [not, we think, sufficient proof of the purpose and uses for which the note was executed and the advances applied, to authorize a sale of the wife's property under the trust deed. Viser *v.* Scruggs, 49 Miss., 705. The note, however, was a valid and binding debt against the husband, who, being *sui juris*, might well bind himself for a debt incurred by the wife which would not bind her. Can then the income of the wife's estate be subjected to its payment, she being treated as a security for her husband? We think so, as long as the wife lives. But in the case at bar, Mrs. Wood is dead. Can the income of her property after her death be continuously subjected to the debt by being placed in the hands of a receiver, and its proceeds applied indefinitely to the liquidation of the incumbrance until it has been extinguished?

This important question has never heretofore been decided in this state, nor elsewhere under a statute similar to ours, so far as we are advised.

The language of the statute is, "No conveyance or incumbrance for the separate debts of the husband shall be binding on the wife beyond the amount of their income." § 1778 of Code. Under this clause it was held in Viser *v.* Scruggs, *supra,* that the property of the wife which had been mortgaged for the husband's debt might be put in the hands of a receiver until the rents and profits should pay off the debt. Can this be done after the death of the wife, or if done during her life, can it be held by the receiver after her death? We think not. In the first place, the words used by the statute are "her income." It is "her income" which may be bound. Can the rents and profits of her property be said to be "her income" after her death? The words seem to imply a living person. After her death, the rents and profits of her property would more appropriately be styled "the income of her estate." They would belong either to her heirs or to her personal representatives.

Apart from this verbal construction, we think that grave considerations, both of reason and of policy, would dictate that the liability of her income should cease with her life. If this be not so, then practically the *corpus* of her estate is subjected to her husband's debt, and this too, in the most unwise and obnoxious manner. Her property placed *in custodia legis* in the hands of a receiver, must remain there indefinitely, and in cases where the interest on the debt exceeded the income from the property, this occupancy by the receiver must be perpetual and everlasting. Than this, nothing can be conceived more at variance with the law which exempts the body of her estate from liability to her husband's debts, and more repugnant alike to the interests of the state, and to a wise system of jurisprudence.

We are of opinion that the liability of the wife's income to her husband's debts, where she has bound her separate property therefor, terminates at her death.

There was no error in the decree below, which is affirmed.