SLEDGE, McKAY & CO. *v.* ANNA L. OBENCHAIN ET AL.

1. MORTGAGE. *Change in form of security. Obligation of married woman. Her death.*

On the 25th of June, 1877, B. executed a mortgage on certain land owned by him, to secure a debt of $4,500 which he owed S. On the 6th of November, 1877; B., by a deed duly recorded, conveyed the same land to his wife, subject to the mortgage to S. On the 12th of February, 1878, B. and wife sold and assigned to their children the rents and profits of this land for $900, which was to be paid to S. for the account of B. On the same day they executed to their children a voluntary conveyance of the land, though it was not delivered, if at all, till October, 1878. On the 11th of June, 1878, B. was owing S. a balance of $1,091.33 on the mortgage debt and $2,144.16 unsecured, and gave his note for the aggregate amount due, and to secure the same he and his wife executed a mortgage on the land covered by the first mortgage. S., having no actual knowledge of the conveyance of the land by B. to his wife, and by them to their children, cancelled the mortgage of the 25th of June, 1877. B. and wife both died in the autumn of 1878. Their children paid to S. the $900, according to their agreement with their parents. In February, 1880, S. filed a bill to enforce the mortgage given by B. and wife on the 11th of June, 1878, if that could be done; and if not, then to enforce the mortgage given by B. on the 25th of June, 1877. *Held*, that the land cannot be subjected to the payment of the $2,144.16, but may be subjected for the payment of the balance of the $1,091.33 of the first mortgage debt. For such balance the land is bound, (1) because the first mortgage was not extinguished by the taking of the subsequent mortgage, which in the circumstances thereof was a mere change in the form of the security, not affecting innocent third persons; and (2) because Mrs. B. took the land subject, expressly, to the first mortgage to S., and while she could not ordinarily bind the *corpus* of her estate to secure the debt of her husband, she could by the new mortgage bind it for the debt for which it was already bound by the old mortgage. The *corpus* of her land was not bound for the $2,144.16, and by her death the income was discharged from liability therefor.

2. SAME. *Fraudulent conveyance. Subsequent encumbrancer.*

In the case above stated, S. is not in a condition to assail the conveyance from B. to his wife on the ground that it was made to hinder, delay, or defraud creditors, because as to such conveyance he is both a subsequent encumbrancer and a subsequent creditor, with constructive notice.

3. SAME.  *Appropriation of payment.  Case in judgment.*
   The $900 paid to S. by the children of B. and wife, as above stated, should be
   applied to the unpaid balance of the first mortgage debt, for the reason that.
   at the time they assumed the payment of that amount there was no debt due
   by B. to S. except that on the first mortgage, and at the time they made the
   payment there was no other debt which they could be called on to pay to S.,
   but for this debt the land conveyed to them was bound, and they had person-
   ally assumed liability to the extent of $900.

APPEAL from the Chancery Court of Grenada County.

Hon. J. B. MORGAN, Chancellor.

The case is sufficiently stated in the opinion of the court.

*J. J. Slack* and *R. Horton*, for the appellants.

The complainants in their bill allege that they were wholly
ignorant of the existence of any deed from A. S. Brown to
his wife, conveying the lands mortgaged to them; otherwise,
they would not have cancelled the first trust-deed, nor would
they have surrendered "the said note and account which it
secured." This allegation is not denied in the answer, except
*arguendo*. And we submit that, in effect, the allegation of the
bill in reference to notice of said deed is not denied, but is
admitted. Code 1871, sect. 1024; 51 Miss. 164; 54 Miss. 61;
Code 1880, sect. 1892; 41 Miss. 83; 5 Miss. 257.

The inevitable conclusion from the whole evidence is that
Brown, in his dealings with reference to his lands, was de-
frauding his then existing creditors, and Mrs. Brown knew it.
"Strong presumptive evidence of fraud will outweigh posi-
tive proof against it." 6 Smed. & M. 647, 709. The con-
duct of the party is referred to in determining his intention.
5 How. 682, 683; 10 Ves. 475. It is not necessary to consti-
tute fraud that there be an evil intention. 5 How. 684;
Bump's Fr. Conv. 152, 154, 176, 233. Fraud may be estab-
lished by circumstantial evidence as well as by positive proof.
4 Smed. & M. 74. The property having been left in the pos-
session of A. S. Brown, and under his control and manage-
ment, the *onus probandi* is on defendants to show the fairness
of the transaction. 6 How. 34; 5 Cushm. 277; 5 Geo. 576.

The deed from Brown to his wife was void as to his cred-

itors (complainants), who were such at the time of its execution. Code 1871, sect. 1778.

We submit that, although there are authorities holding that the proviso to sect. 1778 of the Code of 1871 applies to voluntary conveyances only, it is doing violence to the English language to so hold; for without that proviso a voluntary conveyance would be set aside, hence its insertion would be useless verbiage. A similar proviso in the Code of 1857 was repealed by the Legislature. See sect. 2 of the act of 1867, pp. 725, 726. This act is referred to in the case of *Kaufman* v. *Whitney*, 50 Miss. 108, in support of the conclusion reached. It is " any conveyance," etc.

*Fitz-Gerald & Whitfield*, for the appellees.

Counsel for appellants refuse to understand the repeated and explicit charges in the answer of appellees that complainants had actual knowledge of the deed from Brown to his wife. Counsel say it is charged in the bill that complainants did not know of the deed actually, and that this allegation is not denied by the answer, except *arguendo*. It is denied positively and expressly. The answer says: " But they *deny positively* that at that time complainants had no knowledge of the existence of the deed from A. S. Brown to his wife, Jeannette Brown, of date June 29, 1877, but charge," first, that they had constructive notice, etc, and then, proceeding, " and further, that complainants had actual knowledge of the existence of said deed to Jeannette Brown, on and long before the eleventh day of June, 1878."

Without referring to all the authorities as to the presumptions in favor of appellees created by the decree below, and remarking only that this is a case calling for a strong application of those presumptions against appellants, we submit that the decree is correct, and should be affirmed. The first trust-deed was satisfied on complainant's own agreement for a valuable consideration, with full knowledge; the second is not binding, Mrs. Brown being dead. *Stephenson* v. *Miller*, 57 Miss. 48 ; *Reed* v. *Coleman*, 51 Miss. 835 ; *Viser* v. *Scruggs*,

49 Miss. 715 ; *Dibrell* v. *Carlisle*, 48 Miss. 706 ; *Erwin* v. *Hill, Strange & Co.*, 47 Miss. 675.

COOPER, J., delivered the opinion of the court.

On the twenty-fifth day of June, 1877, A. S. Brown was the owner of certain lands in Grenada County, and on that day executed a mortgage thereon to Sledge, McKay & Co., to secure a debt of $4,500 due to them.

On the sixth day of November, 1877, Brown conveyed these, with other lands, and eight mules, to his wife, Jeannette Brown, and the conveyance was duly recorded, the consideration being a credit of $5,000 given by her on a note for $11,000 executed by her husband on the preceding day to her, which note was executed in consideration of certain property of his wife's received by him many years before from the estate of Mrs. Brown's father. The deed recites the fact that Mrs. Brown accepted the conveyance of the land subject to the mortgage to Sledge, McKay & Co., and to other mortgages to other parties.

On the seventeenth day of February, 1878, Mr. and Mrs. Brown sold to their children, Frank S. Brown and Mrs. Obenchain, the mules named in the conveyance to Mrs. Brown, and certain other personal property not necessary to be named, and all the rents, issues, and profits of the lands mortgaged to Sledge, McKay & Co., for the sum of $900, which sum the purchasers were to pay to Sledge, McKay & Co. for account of A. S. Brown. On the same day they executed a voluntary conveyance of the land to Mrs. Obenchain and Frank S. Brown ; but the deed was not delivered, if at all, until October, 1878.

On the eleventh day of June, 1878, there remained due and unpaid to Sledge, McKay & Co. the sum of $1,091.33 of the mortgage debt, and A. S. Brown was then indebted to them in the further sum of $2,144.16, which amount was unsecured. It was agreed between A. S. Brown and Sledge, McKay & Co. that he should execute a note for both sums, to be due

January 1, 1879, which was done.    To secure this note, A. S. Brown and wife executed on that day (June 11, 1878) a mortgage on the lands formerly mortgaged, and on the eight mules which she had received from her husband and had sold to her children, and all the crops to be raised on the lands mortgaged, during the year 1878, which she had also sold to her children. Sledge, McKay & Co., having no actual notice of these transfers of property by A. S. Brown, cancelled the mortgage executed on the 25th of June, 1877.    A. S. Brown and his wife, Jeannette, died in the fall of 1878.    After their death, Frank S. Brown paid, or caused to be paid, to Sledge, McKay & Co., from the proceeds of the crop raised on the mortgaged lands, the sum of $892.59; and before answer filed in this cause, Mrs. Obenchain tendered to them the sum of $7.41 in discharge and payment of the $900 which she and her brother had agreed to pay to them for account of A. S. Brown. Sledge, McKay & Co., by their bill, set up the facts connected with their dealings with A. S. Brown, and charge that they had no actual notice of the conveyance from him to his wife; that said conveyance was made to hinder, delay, and defraud them; that Brown owed his wife nothing; and that the conveyance from Mr. and Mrs. Brown to Frank S. Brown and Mrs. Obenchain was both voluntary and fraudulent.    They allege that administration on the estate of A. S. Brown has been granted in the State of Tennessee, and that the estate is insolvent; and pray that the deeds from A. S. Brown to Jeannette Brown, and from Mr. and Mrs. Brown to Frank S. Brown and Mrs. Obenchain, may be declared fraudulent and cancelled; that the lands be subjected to the payment of this debt, or if this cannot be done, then that the mortgage executed June 25, 1877, may be reinstated and foreclosed for the amount due and unpaid on the debt thereby secured; and also pray for general relief.

On final hearing the chancellor dismissed the bill, basing his decision, as is shown by the decree, upon the facts found by him, that complainants accepted the second mortgage with

notice of the conveyance from A. S. Brown to his wife, and that the first mortgage was thereby extitnguished.

We do not concur in the finding of the chancellor that the security afforded by the first mortgage was extinguished by the dealings between complainants and Mr. and Mrs. Brown. It is a well-established principle that courts of equity, where there has been a mere change in the form of the indebtedness or security, and where the rights of innocent third persons are not affected, will keep alive the original security to enforce the very right and justice of the case. *Thomson* v. *Hester*, 55 Miss. 656 ; *Cansler* v. *Sallis*, 54 Miss. 446. The evident intention of complainants was to retain a security upon the identical property named in the first mortgage, to secure the identical debt thereby secured ; and the mere fact that a new mortgage was executed to secure that debt and another, and the old security surrendered, does not preclude them from insisting upon the security afforded by the original mortgage. But upon another equally well settled principle complainants were entitled to subject the land for the payment of the balance due on the first mortgage debt.

The conveyance from A. S. Brown to his wife, Jeannette, expressly conveys the land subject to the mortgage of complainants. It is true that because of Mrs. Brown's coverture she could not incur any personal liability to the mortgagees, nor, perhaps, are the words of the conveyance sufficient to impose such personal liability ; but, as between A. S. Brown and his wife, after the conveyance the land in equity is considered the primary debtor, and the obligation of Brown is in the nature of a security. As to the land, Brown occupied the relation of a surety, and if he had been compelled to pay the mortgage debt, he would have been considered as an assignee thereof and entitled to foreclosure. *Cleveland* v. *Southard et al.*, 25 Wis. 479 ; 7 Paige, 248, 591 ; 2 Johns. Ch. 125 ; *Waters* v. *Bossel*, 58 Miss. 602.

Mrs. Brown, being a married woman, was unable to bind, by mortgage or otherwise, the *corpus* of her estate to secure the

debt of her husband, but she had power to secure so much of
the debt as was, before the execution of the mortgage, a lien
on her estate.   *Nelson* v. *Miller*, 52 Miss. 410.   Complain-
ants cannot in this proceeding subject the land to the payment
of the $2,144.16, which was not secured by the first mortgage.
If the conveyance from Brown to his wife is valid, then the
death of Mrs. Brown operated to discharge her land from the
payment of this amount, which was and is the debt of her
husband.   *Reed* v. *Coleman et al.*, 51 Miss. 835.   If the
conveyance was made to hinder, delay, or defraud the creditors
of A. S. Brown, yet complainants are not in a condition to
assail it; for, as to such conveyance, they are both subsequent
encumbrancers and subsequent creditors with notice.

The amount ($892.59) paid complainants by Frank S.
Brown ought to be appropriated to the payment of that por-
tion of the debt which bound the lands conveyed to Mrs.
Jeannette Brown, and which were by her conveyed to defend-
ants.   Mrs. Brown, when she accepted the conveyance from
her husband, took the land encumbered only with the debt
then owing complainants, all of which, except the sum of
$1,091.33, was paid by her husband before the eleventh day
of June, 1878, when she executed the mortgage.   On the 12th
of February, 1878, she sold the mules and personal property
to her son and daughter, in consideration of the payment by
them to Sledge, McKay & Co. of the sum of $900 for account
of A. S. Brown.   At this time A. S. Brown owed no debt to
Sledge, McKay & Co. except the $4,500 mortgage debt, or so
much of it as was then due and unpaid.   It is therefore evi-
dent that Mrs. Brown intended this payment to be applied to
the discharge of the debt for which her property was bound.
But there is another and conclusive reason for requiring the
appropriation of this payment to the balance due on the first
mortgage debt, which is, that at the time (December 11,
1878) when it was made there was no other demand which
Frank S. Brown and Mrs. Obenchain could be called upon to
pay; but this bound the land conveyed to them, and in addi-

·tion to that, they had personally assumed payment to the ·extent of $900.

In this view of the rights of the parties, it is evident the tender made by Mrs. Obenchain was not of the amount for which complainants could subject the land.    She tendered the ·difference between the amount paid by Frank S. Brown and .$900, which he and she had agreed to pay in consideration of ·the sale to them of the personal property.    Complainants ·ought to be paid the difference between the sum paid by Frank S. Brown and the amount due on the debt secured by the first mortgage, and interest.

The decree is reversed and cause remanded, for a decree in :accordance with this opinion.